UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| OMNI AI, INC. § | Case No. 18-33742 |
| § | |
| Debtor.[1] § | |

**DEBTOR'S EMERGENCY APPLICATION FOR APPROVAL OF RETENTION OF ALLISON BYMAN PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AS CHIEF <u>RESTRUCTURING OFFICER FOR THE DEBTOR</u>**

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE APPLYING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE APPLYING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE APPLYING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 6, 2018 AT 10:30 A.M. IN COURTROOM 400, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtor's address is 1400 Broadfield Blvd, Suite 650, Houston, TX 77084 and the last four digits of its tax identification number are 9604.

**To the Honorable David R. Jones**
**United States Bankruptcy Judge:**

Omni AI, Inc. (the "Debtor") debtor and debtor-in-possession in the above-captioned case, files this application to employ Allison Byman ("Byman") as the Chief Restructuring Officer ("CRO") of the Debtor pursuant to 11 U.S.C. §§ 105 and 363, together with the Affidavit of Allison Byman (the "Byman Affidavit" and, collectively, the "Application") and in support thereof, respectfully states as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).  The relief requested in the Application is authorized under §§ 105 and 363 of the Bankruptcy Code.

2. Venue of the Debtor's Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2).

### II.  BACKGROUND

3. On July 3, 2018 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4. No trustee or examiner has been appointed in the Chapter 11 Cases.  The Debtor continues to operate its businesses and manage its properties as a debtor and debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

### III.  RELIEF REQUESTED

5. By this Application, pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtor respectfully requests entry of an order authorizing the Debtor to employ and retain Byman as CRO pursuant to the terms of the Engagement Agreement attached hereto as **Exhibit**

**A** (the "Engagement Agreement").  The Debtor also requests that Byman be the designated representative of the Debtor's estate and that Byman not be removed absent further Order of the Court.

## IV.  BASIS FOR RELIEF REQUESTED

### A.   THE DEBTOR'S NEED FOR A CHIEF RESTRUCTURING OFFICER

6.   The Debtor was a potentially lucrative, if speculative, business specializing in the development of machine learning ("ML") and artificial intelligence ("AI") software.  It is now a non-operating company, but it still has valuable assets, primarily in the form of a 51-patent portfolio.

7.   Previous members of both management and the board of directors—who remain shareholders—appear to have sabotaged the business through fraud, deception, and flagrant incompetence.  The appointment of an independent CRO is absolutely necessary to investigate their wrongdoing and prevent these bad actors from further jeopardizing the Debtor's remaining assets to the detriment of creditors.

8.   The Debtor was created as part of a transfer, in lieu of foreclosure, of assets from Behavioral Recognition Systems, Inc., later renamed Giant Gray, Inc. ("Giant Gray"), through Pepperwood Fund II ("Pepperwood"), a financing vehicle, on January 31, 2017.  This transfer is the subject of ongoing litigation in several lawsuits.  Giant Gray's former CEO and primary shareholder, Ray Davis, and his son, Charles Davis, were sued by Giant Gray for fraud and the misappropriation of funds after Ray Davis and Charles Davis resigned.

9.   The Securities and Exchange Commission filed charges against Giant Gray and Ray Davis on December 14, 2017 for investment fraud.  The U.S. Attorney's Office for the Southern District of Texas unsealed criminal charges against Ray Davis on the same day.  Giant Gray's investors originally brought fraudulent transfer claims against the parties involved in the

transfer of assets from Giant Gray, through Pepperwood, to the Debtor. However, Giant Gray's creditors filed an involuntary bankruptcy on April 13, 2018. The trustee, who now owns the fraudulent transfer claims, is reviewing claims against the Debtor and former members of the Debtor's board and management over the transfer of assets.

10. The deed in lieu of foreclosure from Giant Gray was originally intended to "cleanse" the ML and AI from the bad acts of Giant Gray's management and board of directors. Unfortunately, however, the Debtor's prior management continued to lead investors, lenders and other to believe operations at Omni AI would begin imminently (to develop and market the ML and AI) and that those operations would be fully funded. They were not. Even if management had secured proper funding, its business plan was a failure. It aimed to contract for one-off AI development projects, which management claimed would generate "billions" within a couple years. Management also represented to the investors and the board that this model would create a patent portfolio worth hundreds of millions of dollars or more. None of this came to fruition, nor does it seem that certain actors had any intention of bringing it to fruition. Management ignored the need for repeatable sales and a scalable business model. To make matters worse, management hired a team utterly incapable of developing, marketing, selling, and supporting commercialized AI and ML software to generate revenue because it lacked commercial experience. The resultant model was grossly unwise for a startup and dangerously toxic to employees, investors, and lenders.

11. However, management's other failures were more egregious. Those that had a hand in the Debtor's mismanagement and are involved in the multifarious litigation participated in, among other things, the following misdeeds: misrepresentations to noteholders, distribution of fraudulent financials to creditors, failure to disclose insider compensation, failure to disclose

conflicts of interest, special distributions to favored investors, and rank self-dealing. At least some of these actions began well before Pepperwood's friendly foreclosure of Giant Gray's assets and continued after the transfer of the property to the Debtor.

12. Larry Hannah is currently the only member of the board. When Mr. Hannah learned of continued misrepresentations by management while he was attempting to raise money for the Debtor, Mr. Hannah asked the involved board members and management to resign, which they did.

13. Nevertheless, the threat of further damage has not passed; those who participated in the wrongdoing are still shareholders of the Debtor. They plan to call a shareholder meeting, which has allegedly been noticed, with the intent of engaging in further misconduct involving the Debtor's remaining assets. This places the Debtor's patent portfolio—and its creditors—at grave risk of harm.

14. There are no other first-day motions. In order to protect the assets and creditors from harm, an independent CRO is necessary to rectify mismanagement, investigate all potential claims, and prevent shareholders from engaging in further wrongdoing to the detriment of everyone but themselves.

**B.    BYMAN'S QUALIFICATIONS**

15. Byman has substantial experience as a chapter 7 trustee in this District and as plan or liquidation trustee in chapter 11 cases. In the last three years, Byman has served as chief restructuring officer of several medical clinics and as the chapter 11 trustee of a community hospital and shipbuilding business during an ownership dispute ultimately resolved during her tenure. Through these representations and her work as a chapter 7 trustee, Byman has extensive contacts in the industry to assist in restructuring businesses in addition to marketing and selling assets.

## C. THE ENGAGEMENT

16. As set forth in the Engagement Agreement, the Debtor has engaged Byman as CRO. The Debtor and Byman have agreed that Byman will serve as the Debtor' CRO. In her capacity as CRO, Ms. Byman is an officer of the Debtor.

17. Byman will perform certain services on the Debtor's behalf, including but not limited to:

    a. lead efforts to facilitate the Debtor's restructuring efforts;

    b. supervise the Debtor's operations;

    c. oversee and supervise all aspects of cash receipts and disbursements, if any, and all reporting;

    d. direct the retention of other professionals;

    e. direct the preparation of budget projections, cash disbursements and receipts and results of operations to determine long and short term needs;

    f. work with management to develop a plan to restructure unfavorable debt obligations and participate in a debtor reorganization process through a bankruptcy case;

    g. develop an action plan and discuss with the Board, counsel, creditors and/or governmental authorities;

    h. assist in the assembly of financial information to be issued relating to the sales of assets and business as required;

    i. meet with management, the Board, counsel, creditors, governmental authorities and other parties as necessary;

    j. communicate with the Debtor's creditors and governmental authorities (the general direction for which will be determined by the Board);

    k. perform other services as directed by the Board and mutually agreed to by Byman.

D.  **DISCLOSURES CONCERNING CONFLICTS OF INTEREST**

18. To check and clear potential conflicts of interest in this case, Byman has researched her law firm's client database to determine whether Hughes–Watters–Askanase, LLP or Ms. Byman has or had any connection with, among others, the following entities:

   a. company and affiliated entities;

   b. major secured lenders (including current and former administrative agents);

   c. 20 largest unsecured creditors

   d. equity security holders;

   e. current and former officers and directors; and

   f. counterparties to major contracts.

19. To the best of the Debtor's knowledge, and based upon the Byman Affidavit, Byman is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code. To the best of the Debtor's knowledge, Byman does not hold any interest adverse to the Debtor or its estates. Furthermore, to the best of the Debtor's knowledge, Byman does not have any connection with the Debtor, its creditors, or any other party in interest herein, or its respective attorneys or accountants, the United States Trustee or any person employed in the office of the United States Trustee, except as set forth in the Byman Affidavit.

20. From time to time, Hughes–Watters–Askanase, LLP or Byman may have represented certain creditors and other parties in interest in matters unrelated to this case. However, they will not provide services to creditors of the Debtor, including, without limitation, those listed in the Byman Affidavit, in connection with any matters relating to the Debtor.

**E.     COMPENSATION**

21.     Under the Engagement Agreement, Promerica, L.P. paid Byman a $50,000.00 retainer (the "Retainer") and agreed to pay Byman on an hourly basis upon presentation of invoices, maintaining the balance of the Retainer at $50,000.

22.     The Debtor submits that a retainer is appropriate for several reasons.  First, these types of retainer agreements reflect normal business terms in the marketplace.  Second, the Debtor and Ms. Byman have negotiated the retainer at arm's length.  Third, the retention of Byman is in the best interests of the Debtor's estate.

23.     In addition, Byman will be reimbursed for her reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger, computer research and telephone charges.  Consistent with local practice, nonworking travel time will be charged at half rates.

24.     Byman intends to maintain detailed, contemporaneous time records in tenths of an hour and to apply to the Court for the allowance of compensation for professional services and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines for Professional Compensation established by the Office of the United States Trustee (the "UST Guidelines") , and any additional procedures that may be established by the Court in these Chapter 11 cases. Byman has agreed to accept as compensation such sums as may be allowed by the Court. Byman understands that interim fee and final fee awards are subject to approval by this Court.

25.     Byman intends to make reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the UST Guidelines in connection with this Application and any interim and final fee applications to be filed in this case.

6709710v1

26. In light of the foregoing, and given the numerous issues which Byman may be required to address in the performance of its services hereunder, the Debtor believes that the proposed compensation is both fair and reasonable.

## V. **AUTHORITY FOR RELIEF REQUESTED**

27. The Debtor respectfully submits that the terms of the proposed engagement of Byman including, without limitation, the fee structure and the indemnity, should be approved.

28. The retention of interim corporate officers such as a CRO and other temporary employees is proper under section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(l).

29. The debtor's business judgment is given significant weight. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm of Equity Sec Holders v. Lionel Corp. (In re Lionel Corp.)* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware &Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (courts have applied a "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"). The business judgment rule is respected within the context of a chapter 11 case and shields a debtor's management from judicial second-guessing.

30. Bankruptcy courts have considered the propriety of a debtor in possession's employment of a corporate officer under Bankruptcy Code Section 363 on numerous occasions and regularly concluded that it is an appropriate exercise of business judgment to employ a corporate officer in such manner. *See, e.g. In re Seahawk Drilling, Inc.*, Case No. 11-20089 (Bankr. S.D. Tex. Feb. 14, 2011); *In re Gulf Coast Oil Corp.*, Case No. 08-50213 (Bankr. S.D. Tex. Sept. 29, 2008).

31. The retention of Byman is a sound exercise of the Debtor's business judgment. Byman has extensive experience with providing restructuring and related services to troubled companies, and is a seasoned turnaround and restructuring attorney and trustee. Moreover, the terms of the Engagement Agreement were the product of arms-length negotiations and are economically fair, reasonable and beneficial to the estate. The compensation agreement provided for in the Engagement Agreement is consistent with and typical of arrangements entered into by other firms with respect to rendering similar services for clients such as the Debtor. In light of the foregoing, the Debtor believes that the retention of Byman as the CRO will provide services that benefit the Debtor's estate and creditors.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) approving the retention and appointment of Allison Byman as CRO pursuant to Sections 105 and 363 of the Bankruptcy Code; (ii) approving the compensation terms set out above; and (iii) granting such other and further relief as may be just and proper.

DATED: July 3, 2018

**OMNI AI, INC.**

/s/ Larry Hannah
Larry Hannah

Respectfully submitted,

**PORTER HEDGES, LLP**

By: /s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl
State Bar No. 24038592
Eric M. English
State Bar No. 24062714
Porter Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6295
jwolfshohl@porterhedges.com
eenglish@porterhedges.com

**Proposed Counsel for the Debtor and Debtor in Possession**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served via first-class U.S. mail, postage prepaid on all of the parties on the attached service list on this 3rd day of July, 2018.

/s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl

SERVICE LIST

Atlantic Relocation Systems
5210 Tacoma Dr.
Houston, TX 77041

Dunn Firm, P.C.
1909 Woodall Rodgers Freeway Suite 590
Dallas, TX 75201

Eaton Corporation
29085 Network Place
Chicago, IL 60673

Federal Express
PO BOX 660481
Dallas, TX 75266

H20 Warehouse, LP
7920 Belt Line Rd, Suite 380
Dallas, TX 75254

Houston Portfolio LLC
PO Box 732307
Dallas, TX 75373

Ithaka Partners, LLC
Pete Nicholas
4815 Shore Lane
Boca Grande, FL 33921

Kalil, Assed
2304 Kemerton Drive
Plano, TX 75025

Lederhandler, Marc R
7440 SW 106th St
Miami, FL 33156

Sloan & Roberts, PLLC
5151 Belt Line Td, Suite 1050
Dallas, TX 75254

Spitz Industrial Design, LLC
31 Edgewood Run
Amherst, NH 03031

Wells, Thomas
7560 William Penn Place
Indianapolis, IN 46256

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

US Attorney's Office
1000 Louisiana, Suite 2300
Houston, TX 77002-5010

Texas Attorney General's Office
Bankruptcy-Collections Division
P.O. Box 12548
Austin, TX 78711-2548

Texas Comptroller of Public Accounts
Revenue Accounting DIV - Bankruptcy Section
P.O. Box 13528
Austin, TX 78711-3528

US Trustee's Office
515 Rusk St # 3516
Houston, TX 77002

6709710v1