# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **OMNI AI, INC.** | § | **Case No. 18-33742** |
| | § | |
| Debtor.[1] | § | |
| | § | |

## PLAN OF REORGANIZATION

Intellective AI, Inc., files this its *Plan of Reorganization* (the "**Plan**")

## ARTICLE I.

## DEFINITIONS

Capitalized terms used in this Plan, unless otherwise defined herein, shall have the insider defined term or terms used in the Plan, unless context requires otherwise, (i) the singular shall include the plural and the plural shall include the singular, (ii) the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive, and (iii) reference to any gender shall include any other gender as appropriate.  Unless the context otherwise requires, the following terms used herein shall have the following meanings:

**1.01    Administrative Expense** shall mean any right to payment arising from costs or expenses of administration of the Debtor's Estate allowed under Section 503(b) of the Bankruptcy Code, including, without limitation: any actual and necessary expenses of preserving such Debtor's Estate; any actual and necessary expenses of operating such Debtor's business from and after the Petition Date to and including the Confirmation Date; all allowances of compensation or reimbursement of expenses to the extent approved by the Bankruptcy Court under Section 330 of the Bankruptcy Code; and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

**1.02    Administrative Expense Bar Date** shall mean the date that is thirty (30) days after the Effective Date. The Administrative Expense Bar Date is the last date on which a person who does not assert an Administrative Expense of Professionals may file a claim for an Administrative Expense

---

[1]    The Debtor's address is 1275 Broadfield Blvd., Suite 650, Houston, TX 77084 and the last four digits of its tax identification number are 9604.

**1.03** **Administrative Expense Objection Bar Date** means the date by which the Debtor must object to applicable Administrative Expenses. The Administrative Expense Objection Bar Date is forty-five (45) days after the Administrative Expense Bar Date.

**1.04** **Administrative Expenses of Professionals** shall mean an Administrative Expense for compensation or reimbursement of expenses to the extent approved by the Bankruptcy Court under Section 330 of the Bankruptcy Code and applicable rules that is held by a professional of the Debtor.

**1.05** **Administrative Expenses of Professionals Bar Date** shall be thirty (30) days after the Plan Closing Date.

**1.06** **Allowed** shall mean with respect to a Claim, except for a Claim which is an Allowed Administrative Expense, a Claim allowable under Section 502 of the Code, scheduled by the Debtor in its Schedules as <u>not</u> disputed, contingent or unliquidated in a specific dollar amount or a Claim proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (a) as to which no objection has been filed with the Bankruptcy Court by the Claims Objection Bar Date, unless the amount of such Claim is permitted  to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum, or (b) as to which an objection was filed by the Claims Objection Bar Date, and then only to the extent Allowed by Final Order of the Bankruptcy Court. Unless otherwise specified in this Plan, an Allowed Claim shall not include any amount of punitive damages, penalties, or any amount of interest which may have accrued from and after the Petition Date on any such Claim.  An Administrative Expense Claim, other than an Allowed Administrative Expense Incurred in the Debtor's Ordinary Course of Business, becomes an Allowed Administrative Expense only after a proper application, complying with the Code and the Bankruptcy Rules, requesting payment of an Administrative Expense has been made and the Bankruptcy Court has entered a Final Order approving of such Administrative Expense, unless otherwise provided for in this Plan.

**1.07** **Allowed Administrative Expense** shall mean an Administrative Expense (including Administrative Expenses of Professionals) that has been Allowed in the manner required by the Plan.

**1.08** **Allowed Administrative Expenses of Professionals** shall mean an Administrative Expense for compensation or reimbursement of expenses to the extent approved by the Bankruptcy Court under Section 330 of the Bankruptcy Code that is held by a professional of the Debtor.

**1.09** **Allowed Claim** shall mean any Claim in the amount and in the priority classification set forth in any proof of such Claim that has been timely filed in this case, or in the absence of such proof, as set forth in the Debtor's Schedule of Liabilities, as amended, filed in the Case, unless: (i) such Claim has been listed in such Schedule as disputed, contingent, or unliquidated, in which case such Claim shall be Allowed only if a proof of such Claim has been timely filed; (ii) such Claim has been objected to or is objected to after entry of the Confirmation Order but prior to the Claims Objection Bar Date, in which case such Claim shall be allowed only in such amount and such classification as is authorized by a Final Order of the Bankruptcy Court;

or (iii) such Claim has been paid in full, withdrawn or otherwise deemed satisfied in full.  An Allowed Claim shall not include un-matured interest accruing after the Petition Date unless otherwise stated in the Plan.

**1.10**    **Allowed General Unsecured Claim** shall mean an Allowed Claim which is not entitled to priority under Section 507(a) of the Bankruptcy Code, or as to which the claimant does not have a validly perfected enforceable lien or security interest as defined in Sections 101(37), (50) and (51) of the Bankruptcy Code, or an Allowed Claim arising from the rejection of an unexpired lease or executory contract.

**1.11**    **Allowed Secured Claim** shall mean an Allowed Claim which is secured by an interest in property of the Debtor's Estate, to the extent of the value of such property.

**1.12**    **Allowed Unsecured Priority Claim** shall mean an Allowed Claim of a creditor which is not secured and which is entitled to priority under Sections 507(a)(3) - (a)(8) of the Bankruptcy Code.

**1.13**    **Avoidance Actions** shall mean all powers exercisable by a trustee/debtor-in-possession pursuant to sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.  A preliminary, but not exclusive list of potential Avoidance Action targets is set forth in Plan Exhibit 1.13 (a copy of page 9 of the Amended Statement of Financial Affairs [DKT #33] of the Debtor, highlighting payees within 90 days of the Petition Date).

**1.14**    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**1.15**    **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of the Southern District of Texas, as amended that are applicable to this Case.

**1.16**    **Bar Date** shall mean November 13, 2018, the last day for holders of claims, other than governmental units, to file proofs of claim while no date has been set for governmental units to files proofs of claim.  This Bar Date does not address any claims which were generated on account of the rejection of an executory contract or unexpired lease or on account of the payment of an Avoidance Action recovery which generates a right to an Allowed Claim.   The bar date for such Claims will be governed by subsequent orders of the Bankruptcy Court.

**1.17**    **Case** shall mean the bankruptcy case Omni AI, Inc. case number 18-33742.

**1.18**    **Claim** shall mean any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor on or as of the Confirmation Date, whether or not such right is reduced to judgment, liquidated, fixed, contingent, disputed, legal, equitable, secured or unsecured.  The debt generated thereby is the liability on the Claim.

**1.19**    **Claims Objection Bar Date** shall the date by which the Debtor must object to applicable Claims. The Claims Objection Bar Date is forty-five (45) days after the Effective Date

or, with regard to claims which are subject to the Rejection Claims Bar Date, sixty (60) days after such date.

**1.20    Code or Bankruptcy Code** shall mean Title 11 of the United States Code.

**1.21    Confirmation Date** shall mean the date on which the Confirmation Order is entered by the Bankruptcy Court.

**1.22    Confirmation Hearing** shall mean the hearing in connection with confirmation of the Plan as commenced or adjourned and continued by the Bankruptcy Court.

**1.23    Confirmation Order** shall mean the order confirming the Plan.

**1.24    Debtor** means Omni AI, Inc.

**1.25    DIP Financing – Intellective** shall mean the $275,000 junior secured loan to the Debtor approved by the Bankruptcy Court by order entered at DKT #59 which is an Allowed Administrative Expense Claim and junior lienholder on the Patent Portfolio pre-confirmation

**1.26    DIP Financing Note – Secured** shall mean the convertible secured promissory note to be issued by Intellective AI as the transferor/successor to the Debtor to the holder of the DIP Financing- Intellective claim on the Plan Closing Date.  The DIP Financing Note-Secured shall have a term of one year, with a single payment due on the first anniversary of the issuance of the DIP Financing Note-Secured.  The DIP Financing Note-Secured shall bear interest at the annualized rate of six percent (6%).  The DIP Financing Note-Secured shall have senior secured status as to the Patent Portfolio on and after the Plan Closing Date.  The DIP Financing Note – Secured shall also have a conversion feature that will allow $137,500 of principal to be converted to 5% of the Interests Post Confirmation as of the Plan Closing Date.  Additional specifics of the DIP Financing Note – Secured are detailed in Plan Exhibit 1.26.

**1.27    Disallowed Claim** shall mean any Claim (or any portion thereof) against the Debtor which has been disallowed pursuant to the provisions of the Code, including, without limitation, any Claim disallowed pursuant to § 502(e) of the Code.

**1.28    Disputed Claim or Expense** shall mean (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) a Claim, proof of which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent, (c) a Claim, or any portion thereof, proof of which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof or an objection to for voting purposes, in whole or in part, has been filed within any time limitation fixed by an order of the Bankruptcy Court, any applicable rule or by this Plan, which objection has not been settled or determined, in whole or in part, by a Final Order or as applicable an order as to voting rights or (d) any Claim for an Administrative Expense which is otherwise required to meet the standards of Section 503 to justify 'payment, or any portion thereof, and as to which an objection to the allowance thereof, in whole or in part has been interposed within any time limitation fixed by an order of the Bankruptcy Court, or by this Plan, which objection has not been settled or determined, in whole or in part, by a Final Order.

**1.29    Distributable Funds** shall mean funds generated by Intellective AI's post confirmation operations that are in excess of the amount reasonably required to fund: a) day to day operations of Intellective AI, including payroll and benefits and to pay, if or until the DIP Financing – Intellective Conversion Option is exercised by the Allowed Administrative Expenses (DIP Financing – Intellective), that allowed administrative expense claim in full.   No distributions to holders of Allowed Pepperwood/Omni Secured Lenders or to holders of Allowed Giant Gray Claims will be made until the Allowed Administrative Expenses (DIP Financing – Intellective) obligations are otherwise discharged or converted to equity securities as detailed in this Plan.

**1.30    Effective Date** shall mean the date which is the fifteenth (15th) day following the Confirmation Date, unless a stay of the Confirmation Order is obtained.  In the event a stay is obtained, the Effective Date will be the fifteenth (15th) day after an order dissolving the stay is entered. If the Effective Date would fall on a weekend or federal holiday, the Effective Date shall be the next business day.

**1.31    Estate** shall mean all properties and interests of the Debtor, whether legal or equitable, which are subject to administration in the Case pursuant to Code § 541 but shall exclude the property excluded from the Estate pursuant to Code § 541.

**1.32    Final Order** shall mean an order or judgment of the Bankruptcy Court or other federal court which has not been stayed and as to which the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken or is pending.

**1.33    General Unsecured Claims** shall mean all unsecured claims of the Debtor, regardless of classification, which are not entitled to any specific priority under the Code.

**1.34    Giant Gray** shall mean Giant Gray, Inc., f/k/a Behavioral Recognition Systems, Inc., a Chapter 7 case pending in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 18-31910.

**1.35    Giant Gray Claim** shall mean: a) as to the Giant Gray Trustee, any claim or power generating an asserted right of recovery by Giant Gray as against the Debtor as detailed in POC #21, including but not limited to those described in *Frank Bagienski et al v. Pepperwood Fund II, L.P. et al* (4:17-CV-02435) U.S. District Court Southern District of Texas, Houston Division; or b) as to any claim by any person who filed a timely proof of claim in this Case as to an initial loan to or investment in Giant Gray as the basis for the Debtor to be obligated on such asserted claim, under any legal or equitable theory including any of those detailed in *Frank Bagienski et al v. Pepperwood Fund II, L.P. et al* (4:17-CV-02435) U.S. District Court Southern District of Texas, Houston Division, but only to the extent that such claim by such person is not controlled by or otherwise property of the estate of Giant Gray or subject to any powers exercisable by the Giant Gray Trustee per otherwise applicable bankruptcy jurisprudence for the benefit of Giant Gray's allowed creditors.  It is assumed that the Giant Gray Trustee controls the litigation titled *Frank Bagienski et al v. Pepperwood Fund II, L.P. et al* (4:17-CV-02435) U.S. District Court Southern District of Texas, Houston Division, and all causes of action that flow from the asserted transactions to the exclusion of parties who filed a proof of claim based upon conduct that is asserted to affect multiple parties in the exact same manner.  These are Disputed Claims.  The Plan

Proponent will file claim objections to any party asserting claims that are property of the Giant Gray Chapter 7 case.

**1.36**   **Giant Gray Trustee** shall mean Lowell T. Cage, Chapter 7 Trustee for Giant Gray.

**1.37**   **Holder of Giant Gray Claim** shall mean the Giant Gray Trustee's claims/powers [POC #21]. The following persons who timely filed proofs of claims in this Case: a) Brent Brunner [POC #18 and #19]; b) Phillip Wilkinson [POC # 22]; c) John D. Tran [POC #23]; d) R& L First Limited Partnership [POC #37]; e) Multimedia Graphic Network Inc.- Pension Plan [POC # 38]; f) Drew Davis [POC #39]; and g) any holders of proofs of claims filed by any of the listed Steele Related Parties not referenced above, but only to the extent based upon any investments or loans made directly to Giant Gray and not any loans that are a part of Pepperwood/Omni Secured Lenders' collective claims, are holders of Disputed Claims.

**1.38**   **Intellective AI.** shall mean Intellective Ai, Inc., a Texas corporation: a) the pre-confirmation holder of the secured DIP Financing- Intellective administrative expense claim; and b) on the Plan Closing Date, the acquiror of all of the assets of the Debtor; and i) a successor to the Debtor as to Section 1145; and ii) representative of the Debtor's estate under Section 1123(b)(3)(B) where applicable.

**1.39**   **Interests** shall mean the pre-petition equity securities, regardless of class, issued by the Debtor, as well as any conversion of equity from either Pepperwood Fund II or related to Giant Gray that was not completed pre-petition.

**1.40**   **Interests Post Confirmation** shall mean: 1) pursuant to either equity securities issued or right to conversion in exchange for debt denoted in Plan Section 1.26 and Plan Exhibit 1.26, by Intellective AI after the Plan Closing Date: a) as a successor to the Debtor under this Plan consistent with Section 1145(a) of the Code for a portion of unpaid DIP Financing – Intellective administrative expense claim, to the extent an offered option is exercised as part of the DIP Financing Note- Secured; or b) any holder of a Pepperwood/Omni Secured Lender claim who is an "accredited investor" under Sections 501 through 506 of Regulation D, promulgated under the Securities Act of 1933, as amended (the "Securities Act") making these issued Interests Post Confirmation are made subject to and are governed by Title 1, Chapter 8 of the Texas Business and Commerce Code as an uncertificated securities, in exchange for proportionate amount of $500,000 in cash on the Plan Closing Date to acquire twenty per cent (20%) of the equity securities in Intellective AI (see Plan Section 4.01 for specifics)); and 2) the current holders of equity securities of Intellective AI holding the resulting eighty per cent (80%) of the total equity securities held.  Please note that the initial ownership of Interest Post Confirmation is subject to dilution by the exercise of conversion of debt noted in Plan Section 1.26.

**1.41**   **Non-Patent Assets** shall mean all of the Debtor's assets, which are not in the Patent Portfolio which are listed in the Debtors Schedules (DKT #10) and any applicable attachment with due reference made to the notes to said Schedules.

**1.42**   **Participation Dividend** shall mean  payment of an equal to 10% of: i) the distributable revenue in the form of dividends otherwise paid to holders of Interests Post Confirmation as generated by Intellective, after an initial return on capital to all of Intellective AI's

equity security holders of $60,000,000.00; or ii) the distributable proceeds of a sale of substantially all of: (A) the Interests Post Confirmation; or (B) or assets of Intellective AI, over and above the return threshold of $60,000,000.00. The payment of the underlying dividends which generates the Participation Dividend from operations of Intellective AI will always be subject to the good faith discretion of Intellective AI as to its operating requirements and financial health.

1.43    **Patent Portfolio** shall mean patents issued, patents pending and any ancillary rights attendant to those patents detailed in Attachment B-60 to Schedule B at DKT #10 pp.66-75 (attached hereto as Plan Exhibit 1.43).

1.44    **Pepperwood/Omni Secured Lenders** shall mean those persons who initially either lent funds to Pepperwood Fund II, LP, which thereafter became secured claims against the Debtor or who in addition lent funds directly to the Debtor and which all are, per the provisions of the various iterations of security agreements executed by lenders and the Debtor (whether directly or indirectly through Pepperwood Fund II, LP) to be treated *parri passu* with all other Pepperwood/Omni Secured Lenders as to their secured status. The Pepperwood/Omni Secured Lenders are specifically: AFT, LLC; Steve Bluestein; Brent Brunnemer; Charna FLP; Wilma Cox; Craig Pension Plan; Robert Craig; Doggett Investments Ltd.; Mark Haney; William & Cheryl Hanlon; Harlan Family Partnership; LP; Fred & Cheryl Heal; Ithaka Partners, LLC; JAG Investments LLC; JBA Holdings, Inc.; Marc Lederhandler; Jana Libbert ; Dan Maines; David Maines; Mark Matkovic; Craig McElheny; Mike Necessary; Patrick G. Theodora Family; PKS, LLC; Terry & Rosemarie Renbarger; James Robertson; ROO Investments, LLC; Rebecca Scheer; SDDS, LLC; Tacito and Associates; Don & Cynthia Unger; John Unger; and Thomas Wells. As to those Pepperwood/Omni Secured Lenders that are also Steele Related Parties, only the amounts due on their *pari passu* loans that were perfected by UCC-1 filing number 17-00115181771, as against Omni, dated April 5,2017 are encompassed by this defined term.

1.45    **Petition Date** shall mean July 3, 2018.

1.46    **Plan Closing Date** shall mean the date that is at least the day after the Effective Date or up to fourteen (14) days after the Effective Date, but not more than twenty-eight (28) days after the Effective Date as Intellective AI may determine.

1.47    **Plan Proponent** shall mean Intellective AI, Inc.

1.48    **Rejection Claim** shall mean a Claim arising pursuant to Section 365 of the Bankruptcy Code from the rejection of an executory contract. Rejection Claims receive the same treatment as other Unsecured Claims held by other holders of claim in the particular class in which the holder of the Rejection Claim is classified.

1.49    **Rejection Claims Bar Date** shall mean the date by which proofs of claim for Claims arising from the rejection of an executory contract must be filed with the Bankruptcy Court. The Rejection Claims Bar Date is thirty (30) days after the Effective Date.

1.50    **Secured Claim** shall mean a Claim that is (a) secured by a lien on property of the Debtor which lien is valid, perfected and enforceable under applicable law, but only to the extent of the value of the property securing any portion of a Claim or (b) deemed Allowed under the Plan as a Secured Claim.

**1.51    Steele Related Parties** shall mean, without specific reference to whether any Steele Party's proof of claim also include Giant Gray Claims, the following persons who filed proofs of claim and/or independently filed UCC-1 financing statements against the Debtor: Brent Brunnemer [POC # 18 and 19]; Wilma Cox and Janna Libbert [POC #13]; Mark Haney [POC #15]; Cheryl and William Hanlon [POC #16]; Alfred and Cheryl Heal [POC #20] Mary Beth Higgins; Daniel Maines [POC #8]; David Maines [POC #10]; Michael and Pamela Necessary [POC # 14];Terry and Rosemary Renbarger [POC# 17]; Rebecca Scheer [POC #9]; Donald Unger [POC #6]; and Jon and Cynthia Unger [POC #5]; and Donna and Richard Webster.

**1.52    Unsecured Priority Claims** shall mean all unsecured claims which are entitled to any specific priority under the Code.

**1.53    Other Definitions** Unless otherwise specified, all section, article and exhibit references are to the respective section in, article of, or exhibit to, the document, as the same may be amended, waived or modified from time to time.  The headings in the document are for convenience of reference only and shall not limit or otherwise affect the provisions thereof.  Unless context requires otherwise, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

## ARTICLE II.

## CLASSIFICATION OF ALLOWED CLAIMS AND ALLOWED INTERESTS

All Allowed Claims and Allowed Interests, other than Allowed Claims specified in Sections 507(a)(1), 507(a)(2) and 507(a)(8), which Allowed Claims are not classified in accordance with Section 1123(a)(1) of the Bankruptcy Code, are placed in the classes described in this Article II of the Plan.

**2.01    Class 1: Allowed Secured Claims of Ad Valorem Taxing Authorities**: Class 1 shall consist of the Allowed Secured Claims of *ad valorem* taxing authorities relating to *ad valorem* taxes due on the Debtor's business personal property, if any.

**2.02    Class 2: Allowed Secured Claims - Pepperwood/Omni Secured Lenders**: Class 2 shall consist of the holders of Allowed Secured Claims of the Pepperwood/Omni Secured Lenders.

**2.03    Class 3: Holders of Security Deposit Based Secured Setoff Claims:** Class 3 shall consist of Houston Portfolio, LLC and H20 Warehouse L.P. to the extent of the listed security deposits, per Debtor's Schedules (DKT #10 p.6).

**2.04    Class 4: Holders of Warehouseman's Secured Claim on FF&E:** Class 4 shall consist of each party holding FF&E of the Debtor in storage and thus holding warehouseman's liens under otherwise applicable state law.  Each holder having different collateral, will be treated as a sub class on its own.

**2.05    Class 5: Allowed General Unsecured Claims (Trade):** Class 5 shall consist of Allowed General Unsecured Claims against the Debtor that were generated in the ordinary course

of the Debtor's pre-petition operations on account of the provision of goods or services to the Debtor.

**2.06    Class 6: Allowed General Unsecured Claims (Non-Trade):**  Class 6 shall consist of all remaining Allowed General Unsecured Claims.

**2.07    Class 7: Allowed Giant Gray Claim**:  Class 7 shall consist of the holder of the Giant Gray Claim.

**2.08    Class 8: Interests**: Class 8 shall consist of Interests in the Debtor.

## ARTICLE III.

## TREATMENT

### *Treatment of Unclassified Claims*

**3.01    Title 28 U.S.C. Section 1930 Fees:**  All fees required to be paid pursuant to 28 U.S.C. § 1930 shall, if not previously paid in full, be paid in cash as and when those fees are normally due, by the Debtor from its post-petition cash flow. To the extent that the Debtor owes pre-confirmation United States Trustee fees required to be paid in accordance with 28 U.S.C. § 1930(a)(6), such fees shall be paid when due or shortly after the Effective Date in accordance with 11 U.S.C. § 1129(a)(12). If paid after the Effective Date, such fees shall be paid by Intellective AI.  The United States Trustee is not required to file an application for payment of Administrative Expense for such pre-confirmation United States Trustee fees.

**3.02    Allowed Administrative Expenses of Professionals:**  Each holder of an Allowed Administrative Expenses of Professionals, if not previously paid in full pursuant to a Final Order of the Bankruptcy Court, shall receive cash equal to the unpaid amount of such Allowed Administrative Expense of Professionals from the Debtor on the first business day after an Order is entered regarding such Allowed Administrative Expense of Professionals, unless a holder of an Allowed Administrative Expense of Professionals agrees otherwise.  All Administrative Expenses of Professionals for work performed through the Confirmation Date shall be filed with the Court within thirty (30) days of the Effective Date or be barred.

**3.03    Allowed Administrative Expenses (DIP Financing – Intellective):**  The holder of the Administrative Expenses (DIP Financing – Intellective) (if the Plan is confirmed and the Effective Date and Plan Closing Date are fulfilled) shall have the DIP Financing Note - Secured executed and delivered to said holder on the Plan Closing Date. Please see the defined term DIP Financing Note – Secured and Plan Exhibit 1.26 for further details on payment and other provisions.  The conversion option detailed therein is governed by 11 U.S.C. §1145(a)(2) as well as other applicable registration exemptions detailed in Plan Exhibit 1.26.

**3.04    Allowed Administrative Expenses of Ad Valorem Taxing Authorities:**  Allowed Administrative Expenses of Ad Valorem Taxing Authorities (2019 accrued *ad valorem* taxes) shall be paid in full in cash on the Plan Closing Date.

**3.05    Allowed Administrative Expenses (Secured) of Warehousemen:** Allowed Administrative Expense of (Secured) Warehousemen, to the extent that storage charges are not otherwise paid by the CRO of the Debtor in the ordinary course of business, will have their post-petition Administrative Expense paid in full on the Plan Closing Date or as soon thereafter as Intellective AI and the holder can arrange for transferring the applicable collateral from the holder(s) of each expense claim.

**3.06    Allowed Unsecured Priority Claims of Taxing Authorities:**  Each holder of an Allowed Unsecured Priority Claim of Taxing Authorities that is **not** also a Class 1 Allowed Secured Claims of Ad Valorem Taxing Authorities, shall be paid in full in cash on the Plan Closing Date. The Allowed Unsecured Priority Claims of Taxing Authorities shall receive pre-confirmation and post-confirmation interest at the rate that is required as to said Taxing Authority pursuant to Code §§ 1129(a)(9), 506 and 511.

### *Treatment of Classified Claims*

**3.07    Class 1: Allowed Secured Claims of Ad Valorem Taxing Authorities**: The holders of the Allowed Secured Claims of Ad Valorem Taxing Authorities shall be paid in full on the Plan Closing Date and shall retain their liens with first-priority lien position until said payment is made.  This class is unimpaired and not entitled to vote.

**3.08    Class 2: Allowed Secured Claims - Pepperwood/Omni Secured Lenders:** The holders of an Allowed Secured Claim - Pepperwood/Omni Secured Lenders will retain their pre-petition *pari passu* security interest in collateral perfected by UCC-1 filing number 17-00115181771, dated April 5, 2017 and the same perfected security interest will follow the collateral transferred to Intellective on the Plan Closing Date.   The Allowed Secured Claims – Pepperwood/Omni Secured Lenders' retained security interest will nevertheless be subject to subordination as detailed in the treatment of the DIP Financing Note – Secured (see Plan Section 3.03).  Each holder of an Allowed Secured Claim - Pepperwood/Omni Secured Lenders will have their pre-petition claim (whether in the form of a Promissory Note or a Secured Convertible Promissory Note or as otherwise initially denominated) paid a pro-rata share from Distributable Funds until 40% of the amount of each Allowed Pepperwood/Omni Secured Claim, without interest, is paid.

Additionally, each holder of an Allowed Pepperwood/Omni Secured Claim shall have the option to acquire a proportionate amount of (20%) of the Interests Post Confirmation on the Plan Closing Date in exchange for a cumulative $500,000 in cash (see Plan Section 4.01 for specifics on how to participate and for necessary forms and information regarding this option).

This Plan treatment is also a settlement proposal with regard to any Steele Related Party who is also listed as a Pepperwood/Omni Secured Lender.  In order for a Steele Related Party to be an Allowed Pepperwood/Omni Secured Claim holder and participate in this treatment and have the option to acquire Interests Post Confirmation, such Steele Related Party must designate on their ballot that they agree to settle any disputes with the Debtor by withdrawing their filed proof of claim to the extent that said Steele Related Party's proof of claim asserts any rights to recovery that are inconsistent with the treatment received by other members of this class as to the amount of the claim generated by the pre-petition document that generates their pre-petition claim. Failure to do so will mean such Steele Related Party will be deemed the holder of a Disputed Claim.

This Plan treatment is also a settlement proposal with regard to any Pepperwood/Omni Secured Lender that is also a holder of a Giant Gray Claim.  In order for the holder of a Giant Grey Claim to be an Allowed Pepperwood/Omni Secured Lender and participate in this treatment and have the option to acquire Interests Post Confirmation, such holder of a Giant Gray Claim must designate on their ballot that they agree to settle any disputes with the Debtor by also accepting the treatment set forth in Section 3.10 Class 4 for whatever rights their Giant Gray Claim may generate.  Failure to do so will mean such holder of a Giant Gray Claim will be deemed the holder of a Disputed Claim as to this class.  This requirement applies regardless of whether or not the Giant Gray Claim is determined to be under the sole control and authority of Giant Gray Trustee on account of applicable principles of bankruptcy jurisprudence.

This class is impaired and is entitled to vote.

**3.09    Class 3: Holders of Security Deposit Based Secured Setoff Claims:** The holders of Security Deposit Based Secured Setoff Claims are entitled to setoff the security deposits held with regard to their respective lease-based proofs of claims, as to the total allowed amount of such holders Bankruptcy Code restricted claims.  As to the exercise of this setoff right, this class is unimpaired and not entitled to vote.

**3.10    Class 4: Holder of Warehouseman's Secured Claim on FF&E:** The holder will receive the eight five per cent (85%) of the amount of their unpaid pre-petition warehouseman's lien claim, in cash, on the Plan Closing Date.  The unpaid balance of such pre-petition storage claim shall be a Class 5 Allowed General Unsecured Claim (Trade). This class is impaired and is entitled to vote.

**3.11    Class 5: Allowed General Unsecured Claims (Trade):** The holders of Allowed General Unsecured Claims (Trade) as listed in Plan Exhibit 3.11 (and any deficiency claim from Class 4), shall receive a pro-rata share of $50,000 in full satisfaction of their Allowed Claim (any such listed claim that is known to be subject to an objection for seeking more than is permitted for rent per the Code, is noted with an asterisk). This class is impaired and is entitled to vote.

**3.12    Class 6: Allowed General Unsecured Claims (Non-Trade):**  The holders of Allowed General Unsecured Claims as listed in Plan Exhibit 3.12, shall receive a pro-rata share of any recovery of any Avoidance Action which Debtor may be able to assert as of the Confirmation Date, by and through Intellective AI as the Section 1123(b)(3)(B) successor to the Debtor. Intellective AI shall retain all rights and control over decisions to litigate to conclusion or to settle and resolve any such Avoidance Action. This class is impaired and is entitled to vote.

**3.13    Class 7: Allowed Giant Gray Claim:** The holder of the Giant Gray Claim shall, in full satisfaction of the Giant Gray Claim, as against the Debtor or any party to whom the Debtor is required or may indemnify under Chapter 8 of the Texas Business Organizations Code (as noted in the Debtor's pre-petition bylaws), receive; a) $100,000 in cash on the Plan Closing Date; and b) the Participation Dividend.  In addition, any claims that may exist on behalf of the Debtor, as referenced in the Debtor's Schedules as against Giant Gray, will be waived, but only if the Giant Gray Trustee designates acceptance of the offered treatment on its ballot.

To accommodate the Giant Gray Trustee's requirement, under FRBP Rule 9019 to secure authority from its Bankruptcy Court by motion and noticed hearing in order to effectuate the acceptance of the treatment set forth herein if such is so designated on its ballot, the Plan Proponent will move to delay the Confirmation Hearing to allow the Giant Gray Trustee to appropriately proceed with seeking to secure binding acceptance authority.  For the avoidance of doubt, an order in the Giant Gray case approving this Plan's treatment is required before any ballot designated acceptance will be deemed valid.  If the treatment is not accepted and approved, then the cash and participation dividend shall remain with Intellective AI.

This class is impaired and is entitled to vote.

**3.14    Class 8: Allowed Interests:**  All Interests in the Debtor will be cancelled, and any rights under any agreements with regard to Interests in the Debtor are cancelled and such holders will receive nothing on account of those Interests.  This class is deemed to reject and is not entitled to vote.

## IMPAIRED CLASSES

The following classes of claims are impaired, as defined in Section 1124 of the Bankruptcy Code and are otherwise generally entitled to vote on the Plan:

Classes 2 and 4-7.

The following class of interests is deemed rejected, as defined in Section 1124 of the Bankruptcy Code and is not entitled to vote on the Plan:

Class 8.

## ARTICLE IV.

## MEANS FOR IMPLENTATION OF THE PLAN

**4.01    Intellective AI's Acquisition of All of the Debtor's Assets Free and Clear of All Liens Claims and Encumbrances:**   The Plan sells substantially all of the Debtor's assets to Intellective AI, free and clear of all liens (save for those detailed in the Plan), claims and encumbrances, and by the confirmation of the Plan, such sale is also free of any claims of any parties in interest (save for those detailed in the Plan) on account of the discharge granted (as detailed in Plan Section 9.01) in exchange for Intellective AI: a) funding the Plan treatments detailed above which have a specific cash distribution component, including various Allowed Administrative Expenses; b) agreeing to alternate payment of the Administrative Expenses (DIP Financing – Intellective) (which treatment shall be binding upon any holder of same); c) offering a portion of its equity securities to holders of Allowed Pepperwood/Omni Secured Lenders claims as noted in the Plan; and d) providing for the stated means to seek to monetize the Patent Portfolio in the market place.

**4.02    Means for Allowed Pepperwood/Omni Secured Lenders to Acquire Interests Post Confirmation:** Allowed Pepperwood/Omni Secured Lenders are directed to review Plan

Exhibit 4.02 with regard to specific requirements to acquire their proportionate share of the 20% of Interests Post Petition that are available to acquire, assuming applicable Pepperwood/Omni Secured Lenders designate on their ballots that they accept the settlements (as applicable) relative to the Steele Parties and to those who are holders of Giant Gray Claims provided for in their respective class treatments (required to be a holder of an Allowed Pepperwood/Omni Secured Lenders Claim) (see Plan Exhibits 4.02A – 4.02C). All Allowed Pepperwood/Omni Secured Lenders are entitled to participate at the proportionate level represented in the materials that comprise Plan Exhibit 4.02 (See Initial Participation Sequence). If there is less than 100% participation by the referenced group, then those who do designate and comply with specific requirements to acquire their proportionate share of the 20% of Interests Post Petition that are available to acquire, may acquire a proportionate share of the unclaimed Interest Post Confirmation based upon those who designate that they are interested in acquiring Interests Post Confirmation that are not claimed (See Subsequent Participation Sequence). The following persons have committed to acquire any unsubscribed portion of the referenced 20% if no other party wishes to participate at the Subsequent Participation Sequence: a) Tom Wells and b) AFT, LLC (see Plan Exhibit 4.02C) and they will proportionately acquire all of the referenced unclaimed Interests Post Confirmation. A preliminary, but not a prerequisite or binding indication of interest, may be made by a holder of an Allowed Pepperwood/Omni Secured Lenders Claim on their ballot. Thereafter, upon the entry of the Confirmation Order, a holder of an Allowed Pepperwood/Omni Secured Lenders Claim must complete the required paperwork that is part of Plan Exhibit 4.02 (see Plan Exhibit 4.02A) and timely return same prior to the Plan Closing Date (See Section 4.04 below).

**4.03    Post Effective Date – Pre Plan Closing Date Actions:** Holders of Allowed Secured Claim - Pepperwood/Omni Secured Lenders must have completed and tendered their Plan Exhibit 4.02 paperwork and tender good funds (cashier's check made payable to Intellective AI") to counsel for Intellective AI as detailed in Plan Exhibit 4.02, with a goal to have all First Level requirements met within seven (7) days after the Effective Date. Funding requirements may continue beyond the Plan Closing Date consistent with the completion of the subscription described in Plan Exhibit 4.02.

**4.04    Plan Closing Date Transactions:** Ordinary and customary documents required to formalize and effectuate the transfer of all of the assets of the Debtor (both the Patent Portfolio and the Non-Patent Assets) to Intellective AI, free and clear of liens, claims and encumbrances and vest said assets in Intellective AI on the Effective Date, shall be executed and thereafter filed with applicable registries, clerk's offices or agencies with regard to the Patent Portfolio and Non-Patent Assets which vest in Intellective AI. These transactions also include payments of both administrative expenses of warehousemen as well as payments to holders of Allowed Claims in Classes 4-7 per those Plan treatment sections. Intellective AI is also authorized to seek the removal or expungement of any inconsistent filings regarding the Patent Portfolio with the Patent and Trademark office or as may otherwise be required to remove any cloud upon the title to same in any court of competent jurisdiction, including but not limited to the Bankruptcy Court.

**4.05    New Bylaws as necessary for Intellective AI to be consistent with 1123(a)(6) of the Code**. New Bylaws will be adopted by Intellective AI, consistent with Section 1123(a)(6) of the Code, See Plan Exhibit 4.05.

## ARTICLE V.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01    Executory Contracts and Unexpired Leases**.  There are no known or listed Executory Contracts or Unexpired Leases.

**5.02    Rejection of any and all Executory Contracts and Unexpired Leases**. The Confirmation Order will act as an order of rejection under Section 365 of the Code with respect to any pre-petition Executory Contract or Unexpired Leases that may exist and were not assumed by prior order of the Court.

**5.03    Claims Based on Rejection of Executory Contracts and Unexpired Leases**. All proofs of claim with respect to Claims arising from the rejection of an executory contract or unexpired lease, unless a prior order specifically directs otherwise, must be filed with the Bankruptcy Court by the Rejection Claims Bar Date. Any Claims arising from rejection of an Executory Contract or Unexpired Lease which are not filed on or prior to the Rejection Claims Bar Date will be forever barred.

## ARTICLE VI.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**6.01    Distributions Pending Allowance.**    No Disputed Claim shall receive any distributions of any cash or other property on account of such Disputed Claim unless and until such Claim is Allowed.

**6.02    Resolution of Certain Disputed Claims as of the Confirmation Date.**  The entry of the Confirmation Order shall serve as the Final Order disallowing those Claims in the Debtor's Schedules which are listed as contingent, unliquidated or disputed and which have not filed a proof of claim prior to the Bar Date, unless otherwise provided in this Plan or by prior order of the Court.

**6.03    Deadline for Objections to Claims Post Confirmation.**  Intellective AI shall, by the Claims Objection Bar Date, file any objections that they may have to any Claim.  All objections shall be litigated to a Final Order unless Intellective AI wishes to withdraw the objection or elects to compromise, settle or otherwise resolve such objection.  No Court authority shall be required to withdraw an objection or settle, compromise or otherwise resolve such objection

**6.04    Deadline for Objections to Administrative Expenses Post Confirmation.** Intellective AI shall, by the Administrative Expense Objection Bar Date, file any objections that they may have to any Expense.  All objections shall be litigated to a Final Order unless Intellective AI wishes to withdraw the objection or elects to compromise, settle or otherwise resolve such objection.  No Court authority shall be required to withdraw an objection or settle, compromise or otherwise resolve such objection.

**6.05    Reserve Account for Disputed Claims and Disputed Administrative Expenses.**
A separate, interest bearing account shall be established to hold the funds that would otherwise be
due to holder of Disputed Claims wherein any distributions due to the holder of such Disputed
Claim under this Plan, will be deposited.   No funds shall be distributed to any holder of a Disputed
Claim, absent a Final Order allowing the Claim or Intellective AI has withdrawn its objection or
has filed notice that it has settled, compromised or otherwise resolved such objection.

**6.06    Distribution of Excess Funds.** As each Disputed Claim is resolved any
distributions which such Allowed Claim is entitled to shall be appropriately disbursed to such
holder within fourteen (14) days of any applicable order becoming a Final Order completely
resolving the issue or the filing notice of a settlement or withdrawal of objection.  Any funds
remaining on account of the requirement to set aside funds until the resolution of the Disputed
Claim, which are not to be paid to the holder of the Disputed Claim on account of a Final Order
resolving the issue or settlement shall be disbursed by Intellective AI to other members of the class
in which the previously Disputed Claim was classified or retained by the  Debtor if Claims in such
Class are otherwise paid per the applicable terms of the Plan.

## ARTICLE VII.

## VOTING

**7.01    Impaired Classes to Vote**.  Each impaired class of Claims will be entitled to vote
separately to accept or reject the Plan depending upon the statement of impairment set forth at the
end of the treatment section set forth in the Plan.

**7.02    Acceptance by Class of Creditors**.  A class will have accepted the Plan if a class
has accepted the Plan by at least two-thirds in amount and more than one-half in number of the
Allowed Claims (or those allowed solely for voting purposes) of the class actually voting.

**7.03    Allowance Solely For Voting.**  Solely for purposes of voting to accept or reject the
Plan, without prejudice to the rights of the Debtor or Intellective AI in any other context, each
Claim within a class of Claims is entitled to vote to accept or reject the Plan only as provided by
section 1126 of the Code.  The amount entitled to vote shall be equal to the Allowed amount of
such Claim as set forth in a timely filed proof of claim, or, if no proof of claim was filed, the
allowed amount of such Claim as set forth in the Schedules, provided the Claim is not listed as
disputed, unliquidated or contingent.  A holder of a Disputed Claim that has not been temporarily
allowed for purposes of voting on the Plan may only vote the Disputed Claim in an amount equal
to the portion, if any, of the Claim shown as fixed, liquidated and undisputed in the Debtor's
Schedules, and then only after having sought to have their Claim allowed for voting purposes by
the Bankruptcy Court pursuant to the Rules

**7.04    Voting Procedures.**    Please consult Article VI of the Disclosure Statement
regarding detailed voting procedures.

**7.05    Effect of Not Voting.**  If you do not vote to accept or reject the Plan, you will be
bound by the Plan if it is accepted by the requisite holders of impaired Allowed Claims and the

Bankruptcy Court confirms the Plan.  So, it is in your best interest to vote so that your position as to the Plan is counted.

## ARTICLE VIII.

## GENERAL PROVISIONS

**8.01    Modification of Plan.**  The Plan Proponent may, pursuant to Section 1127(a) of the Bankruptcy Code, modify the Plan at any time prior to the entry of the Confirmation Order. After entry of the Confirmation Order, Intellective AI may, pursuant to Sections 1127(b) and (c) of the Bankruptcy Code and with approval of the Bankruptcy Court, modify or amend the Plan in a manner that does not materially or adversely affect the interests of persons affected by the Plan without having to solicit acceptance of such modification, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

**8.02    Post-Confirmation Fees and Financial Reports.**    Intellective AI shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

**8.03    Further Actions.**    Pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall operate as an order of the Court directing the Debtor, Intellective AI and any other necessary parties to execute and deliver or join in the execution and delivery of, any instrument required to perform any other act that is necessary for the consummation of this Plan.

**8.04    Captions.**    Captions used in this Plan are for convenience only and shall not affect the construction of the Plan.

**8.05    Retention of Jurisdiction.**    Until the Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible under applicable statutory law, including that necessary to ensure that the purposes and intent of this Plan are carried out and to hear and determine the allow-ability of all Claims that could have been determined before the entry of the Confirmation Order.  The Bankruptcy Court shall retain jurisdiction to hear and determine all Claims and enforce all avoidance and other causes of action of the Debtor which its jurisdictional grant will allow.  The Bankruptcy Court shall retain and have exclusive jurisdiction over the Case for all the purposes set out below.  The retention of jurisdiction is intended to allow the Court:

> a)    To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims, specifically including, but not limited to, any proceedings arising under or pursuant to any adversary proceeding or Claims objection brought by the post-confirmation Debtor concerning a Disputed Claim or Disputed Administrative Expense.

> b)    To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan, including fee applications of professionals.

c)      To determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and, if need be, to liquidate, any and all Claims arising therefrom.

d)      To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Code.

e)      To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any person's obligations or rights under the Plan.

f)      To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor or the Debtor's Estate as may be required.

g)      To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Code as may be appropriate (including waste water permit assignments required, but currently not executed).

h)      To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order, the Effective Date or the Plan Closing Date.

i)      To determine any and all adversary proceedings filed by the Debtor during the Case which are unresolved as of the Effective Date.

j)      To assure the performance by the Debtor of their obligations under the Plan.

k)      To enter an order concluding and terminating the Case.

l)      To hear and determine any cause of action related to the Case.

m)      To determine all questions and disputes regarding title to the assets of the Debtor, including but not limited to those which may affect the Patent Portfolio.

n)      To determine any setoff asserted by any holder of a claim against the Debtor, as well as hear any objection to the assertion of a right of setoff, as detailed in the Plan.

This list is illustrative and is not intended to be a limit on the Bankruptcy Court's post confirmation jurisdiction.

**8.06** **Severability.** Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of this Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all parties holding Claims or Interests or to a specific party, then such provision shall be deemed stricken from the Plan. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**8.07** **No Interest.** Except as expressly stated in the Plan, or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge on post-petition Claims arising after the Petition Date is to be allowed.

**8.08** **No Attorneys' Fees.** No attorneys' fees will be paid with respect to any Claim except as otherwise specified in the Plan, as Allowed by a Final Order of the Bankruptcy Court or as allowed in the treatment of an Allowed Secured Claim.

## ARTICLE IX.

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**9.01** **Discharge of Claims.** Because Intellective AI, as the successor to the Debtor will continue as an operating entity and continue the Debtor's business post-confirmation, it is entitled to the discharge provided by section 1141 of the Bankruptcy Code. On the Plan Closing Date, the Debtor shall receive the discharge provided by section 1141 of the Bankruptcy Code and shall be discharged from all claims or other debts that arose before the Confirmation Date as set forth in Section 1141 of the Code. Additionally, all persons who have claims against the Debtor which arose prior to the Confirmation Date shall also be prohibited from asserting such claims against Intellective AI, except as provided in the Plan.

**9.02** **Injunctions.** Except as provided in the Plan or the Confirmation Order, on the date in which the Confirmation Order becomes a Final Order, all entities that have held, currently hold, or may hold a Claim against the Debtor or an Interest or other right of an equity security holder in the Debtor are permanently enjoined from taking any of the following actions on account of any such Claims or Interests: (1) commencing or continuing in any manner any action or other proceedings: (a) against the Debtor; (b) which would generate any claim for an indemnity claim against the Debtor; (c) against Debtor's property or Intellective AI or its property; and (d) specifically continuing any of the following pre-petition instituted litigation: (i) *Frank Bagienski et al v. Pepperwood Fund II, L.P. et al* (4:17-CV-02435) U.S. District Court Southern District of Texas, Houston Division; or (ii) *Tacito & Associates, Inc. v Omni AI., Assed F. Kalil, Michael J. O'Donnell and Clear Sky Power, LLC* (Cause No. DC 18-04216) 101st Judicial District Court Dallas County Texas[1]); (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, Debtor's property or Intellective AI or its

---

[2] Only claims personal to the original plaintiff(s), as opposed to collective claims, as that concept is understood under applicable Fifth Circuit Bankruptcy jurisprudence remain with the original plaintiff(s)

property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, Debtor's property or Intellective AI or its property;  (4) asserting against the Debtor, Debtor's property or Intellective AI or its property a set off right or claim of subordination or recoupment of any kind against any debt, liability or obligation due to the Debtor in any manner or form or by any means, be it non judicially, administratively, or otherwise not provided for in the Plan; and (5) commencing or continuing any action, in any manner, in any place by any means whatsoever, that does not comply with or is inconsistent with the provisions of the Plan.

**9.03    Vesting.**  Except as otherwise provided in the Plan, on the Effective Date, all Property of the Debtor's Estate shall vest in Intellective AI as Debtor's successor transferee, free and clear of all claims, liens, debts, liabilities, charges, interests and other encumbrances.

DATED:  March 18, 2019

Submitted by:

**INTELLECTIVE Ai, INC.**

By: ___/s/ Michael J. O'Donnell_____

Its: _President /CEO_____

E. P. Keiffer (SBN 11181700)
**ROCHELLE MCCULLOUGH, LLP**
325 North Saint Paul St., Suite 4500
Dallas, TX  75201
Telephone: (214) 580-2525
Facsimile: (214) 953-0185
Email: pkeiffer@RoMcLaw.com

**COUNSEL FOR INTELLECTIVE AI, INC.**

# <u>Plan Exhibit 1.13</u>

# Avoidance Actions

| Type | Date | Num | Name | Memo | Account | Split | Amount |
|------|------|-----|------|------|---------|-------|--------|
| Check | 04/03/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/02/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 04/04/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/03/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 04/04/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/03/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 04/23/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/20/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 04/30/2018 | 3 | BANK OF AMERICA, N.A. | | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -63.00 |
| Check | 05/01/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/30/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 05/01/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 04/30/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 05/02/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 05/01/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 05/03/2018 | | BANK OF AMERICA, N.A. | External transfer fee - 3 Day - 05/02/2018 Conf | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -3.00 |
| Check | 05/31/2018 | 4 | BANK OF AMERICA, N.A. | | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -120.00 |
| Check | 06/30/2018 | 5 | BANK OF AMERICA, N.A. | | 10001 · B of A - INC CHECKING 3688 | 81250 · BANK FEES - OH | -169.00 |
| Check | 06/04/2018 | 8 | BEACH VIEW ENERGY PARTNERS, LLC | | 10001 · B of A - INC CHECKING 3688 | 80020 · CONSULTING - OH | -12,000.00 |
| Check | 06/22/2018 | 9 | BEACH VIEW ENERGY PARTNERS, LLC | | 10001 · B of A - INC CHECKING 3688 | 80020 · CONSULTING - OH | -12,000.00 |
| Bill Pmt -Check | 04/19/2018 | WIRE | COLE SCHOTZ P.C. | Legal | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -34,774.79 |
| Bill Pmt -Check | 05/08/2018 | WIRE | COLE SCHOTZ P.C. | Memo:WIRE TYPE:BOOK OUT DATE:180508 | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -120,000.00 |
| Bill Pmt -Check | 05/08/2018 | WIRE | COLE SCHOTZ P.C. | Memo:WIRE TYPE:BOOK OUT DATE:180508 | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -126,522.57 |
| Check | 06/14/2018 | 17 | COLE SCHOTZ P.C. | Cole Schotz Legal Fees | 10001 · B of A - INC CHECKING 3688 | 81200 · LEGAL FEES (NON IP) - OH | -9,265.40 |
| Check | 06/14/2018 | 18 | COLE SCHOTZ P.C. | Cole Schotz Fees | 10001 · B of A - INC CHECKING 3688 | 81200 · LEGAL FEES (NON IP) - OH | -43,754.17 |
| Bill Pmt -Check | 05/13/2018 | WIRE | COOLEY LLP | | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -85,000.00 |
| Bill Pmt -Check | 06/04/2018 | WIRE | COOLEY LLP | | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -8,415.83 |
| Bill Pmt -Check | 06/08/2018 | WIRE | COOLEY LLP | | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -32,051.23 |
| Check | 06/20/2018 | 16 | COOLEY LLP | Cooley invoices | 10001 · B of A - INC CHECKING 3688 | 81205 · LEGAL FEES (IP ONLY) - OH | -17,811.95 |
| Bill Pmt -Check | 04/03/2018 | WIRE | COOPER CPA | retainer for taxes | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -5,000.00 |
| Bill Pmt -Check | 04/03/2018 | WIRE | HOOPER, ANDREW | Consulting | 10001 · B of A - INC CHECKING 3688 | 20000 · ACCOUNTS PAYABLE | -2,082.50 |
| Check | 04/30/2018 | | HOOPER, ANDREW | TRANSFER OMNI-AI INC:Andrew Hooper Con | 10001 · B of A - INC CHECKING 3688 | 80020 · CONSULTING - OH | -1,625.00 |
| Check | 06/04/2018 | 10 | HOOPER, ANDREW | | 10001 · B of A - INC CHECKING 3688 | 80020 · CONSULTING - OH | -3,965.00 |
| Check | 06/22/2018 | 11 | HOOPER, ANDREW | | 10001 · B of A - INC CHECKING 3688 | 80020 · CONSULTING - OH | -2,996.18 |
| Deposit | 05/10/2018 | DEP | ITHACA PARTNERS, LLC | | 10001 · B of A - INC CHECKING 3688 | 11000 · ADVANCES | 127,000.00 |
| Deposit | 05/30/2018 | DEP | ITHACA PARTNERS, LLC | Deposit | 10001 · B of A - INC CHECKING 3688 | 11000 · ADVANCES | 127,000.00 |
| Deposit | 05/08/2018 | | MCELHENY, CRAIG | WIRE TYPE:WIRE IN DATE: 180508 TIME:11( | 10001 · B of A - INC CHECKING 3688 | 11000 · ADVANCES | 134,000.00 |
| Check | 05/11/2018 | 6 | PORTER HEDGES | | 10001 · B of A - INC CHECKING 3688 | 81200 · LEGAL FEES (NON IP) - OH | -25,000.00 |
| Check | 05/14/2018 | 7 | PORTER HEDGES | | 10001 · B of A - INC CHECKING 3688 | 81200 · LEGAL FEES (NON IP) - OH | -25,000.00 |
| Deposit | 05/07/2018 | | WELLS, THOMAS | WIRE TYPE:WIRE IN DATE: 180507 TIME:16: | 10001 · B of A - INC CHECKING 3688 | 11000 · ADVANCES | 120,000.00 |

# <u>Plan Exhibit 1.26</u>

# DIP Financing Note (Secured)

PLAN EXHIBIT 1.26

DIP FINANCING NOTE- SECURED

**THIS NOTE AND THE SECURITIES ISSUABLE UPON CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER THE PROVISIONS OF ANY APPLICABLE STATE SECURITIES LAWS, BUT HAVE BEEN ISSUED IN CONJNECTION WITH THE ENTRY OF THE CONFIRMATION ORDER WITH REGARD TO THE PLAN OF REORGANIZATION (the "Plan")  IN THE CHAPTER 11 CASE *In re Omni AI, Inc.* CASE NO. 18-33742 PENDING IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION (the "Bankruptcy Case").  ADDITIONALLY, THIS NOTE IS ACQUIRED BY THE REGISTERED HOLDERS HEREOF FOR PURPOSES OF INVESTMENT AND IN RELIANCE ON STATUTORY EXEMPTIONS UNDER THE SECURITIES ACT, AND UNDER ANY APPLICABLE STATE SECURITIES LAWS. ACCORDINGLY, THIS NOTE AND THE SECURITIES ISSUABLE UPON CONVERSION HEREOF MAY BE SOLD, PLEDGED, TRANSFERRED OR ASSIGNED AND IS EXEMPT UNDER PROVISIONS OF THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS.**

DIP FINANCING NOTE- SECURED

June ---, 2019

$275,000 (Plus accrued interest as of the Plan Effective Date)                    Houston, Texas

**Intellective Ai, Inc.**, a Texas Corporation (the "Company") as the successor to the Debtor Omni AI, Inc. in payment for the allowed administrative claim owed to the holder of DIP Financing -Intellective obligation, as detailed in the Plan, for value received, hereby promises to pay to **holders of this Note,** ("Payee"), in lawful money of the United States, the principal sum outstanding, together with all accrued but unpaid interest thereon, in accordance with the terms of this Convertible Promissory Note ("Note").

Unpaid principal of this Note shall bear interest (computed on the basis of a year of 365 days of actual day) at a rate per annum which shall be equal to **six percent (6%)**, as such rate may be adjusted in accordance with the terms of this Note. If any payment of principal or interest on this Note shall become due on a Saturday, Sunday, or a public holiday under the laws of the State of Texas, such payment shall be made on the next succeeding business day and such extension of time shall be included in computing interest in connection with such payment. Interest shall be payable upon maturity, or the prior prepayment or repayment of this Note in full.  As noted in Plan and made effective by the Order Confirming the Plan

1.        Maturity.  All outstanding principal and accrued but unpaid interest on this Note shall be due and payable (i) upon the date twelve months from the date of this Note (the "Maturity Date"); or, (ii) upon the occurrence of an Event of Default as more particularly set forth in paragraph 6; or (iii) upon the closing of any transaction that would constitute a sale of the Company,  provided, however, that in the event of a conversion of this Note pursuant to paragraph 3 hereof, the remaining outstanding principal and accrued but unpaid interest on this Note will be paid or converted in accordance with paragraph 3 hereof.

2.    <u>Prepayments</u>. The unpaid principal balance of this Note may be prepaid by the Company, at any time prior to the Maturity Date or the time set for the conversion of this Note in accordance with paragraph 3, in whole or in part without the prior written consent of Payee, and without any prepayment penalty of any kind.

3.    <u>Conversion or Payment</u>.

(a)    <u>Optional Conversion</u>.  On or prior to the Maturity Date, the fifty percent (50%) of the original principal amount and unpaid interest of this Note may, at the Payee's option, be converted into the equity securities in the Company (referred to herein as "<u>Shares</u>"), at Payee's exclusive option, and the conversion shall entitle the holder to five percent (5%) of the then issued equity securities of the Company.  The other fifty percent of the Convertible Promissory Note is required to be paid by the Company absent a written amendment to this Convertible Promissory Note providing for a differing payment option.

(c)    No fractional interests shall be issued upon conversion of this Note.   In the event of a conversion of this Note into Shares in the Company, the Company will take such corporate action as may be required to cause the Shares to be issued if the Plan is not deemed sufficient to justify same by the Company or the holders of the Note. The Company shall, in lieu of issuing any fractional interest, pay to Payee a sum in cash determined pursuant to the applicable formula set forth above.

(d)    While this Note is outstanding, the Company shall keep the Payee reasonably apprised of the status of any proposed equity financing or any transaction that would constitute a sale of Company, and, without limiting the generality of the foregoing, the Company shall give the Payee thirty (30) days written notice of the closing of any such financing or sale.

(e)    Payee may exercise the right of conversion, at Payee's exclusive option and sole discretion, by providing written notice to Company at any time prior to the ten (10) day period immediately before the closing of such financing or sale event. Upon conversion, this Note shall be surrendered to the Company for cancellation and a certificate representing the Shares (or other securities) issued to Payee therefor shall be delivered to Payee. Upon the conversion of this Note, Payee shall be entitled to the same investor protections as the other investors in the Shares or other securities issued to Payee, including, if applicable and without limitation, anti-dilution protection, co-sale rights, registration rights and pre-emptive rights.

4.    <u>Representations and Warranties of Payee</u>. Payee hereby represents and warrants to the Company as follows:

(a)    <u>Purchase Entirely for Own Account</u>. Payee is acquiring the Note, and any securities issuable upon conversion or exercise thereof (collectively, the "<u>Securities</u>") for investment for Payee's own account and not with a view to or for resale in connection with, any distribution thereof. Payee understands that the Securities have not been registered under the Securities Act of 1933, as amended (the "<u>Act</u>"), or any state securities laws by reason of a specific exemption from the registration provisions of the Act and laws that depend upon, among other things, the bona fide nature of the investment

<u>**DIP FINANCING NOTE - SECURED**</u>                                          **PAGE 2**

intent as expressed herein. Nevertheless, the issuance of this note is understood to also be governed by 11 U.S.C. § 1145(a)(2) and the equity securities which may be generated by the conversion provided for herein and is entitled to all of the benefits an issuance under 11 U.S.C. § 1145(a)(2) enjoys as a matter of law.

(b)  <u>Investment Experience</u>. Payee is an accredited investor within the meaning of Regulation D prescribed by the Securities and Exchange Commission pursuant to the Act ("<u>Regulation D</u>") and by virtue of Payee's experience in evaluating and investing in private placement transactions of securities in companies similar to Company, Payee is capable of evaluating the merits and risks of Payee's investment in Company and has the capacity to protect Payee's own interests.

(c)  <u>Restricted Securities</u>. Payee acknowledges except to the extent that 11 U.S.C. § 1145(a)(2) provides for unfettered transferability, the Securities must be held indefinitely unless subsequently registered under the Act and applicable state securities laws, or unless an exemption from such registration is available. Payee is aware of the provisions of Rule 144 and 144A promulgated under the Act that permit limited resale of securities purchased in a private placement subject to the satisfaction of certain conditions.

(d)  <u>Binding Obligations</u>. This Note is a valid, binding and enforceable obligation of Payee, subject to applicable bankruptcy, insolvency, reorganization or similar laws relating to or affecting the enforcement of creditor's rights and to the availability of the remedy of specific performance.

6.   <u>Default: Remedies</u>. The entire unpaid principal balance of this Note plus all accrued and unpaid interest shall immediately be due and payable at the option of Payee upon the occurrence of any default under this Note upon the happening of any condition or event set forth below (each, an "<u>Event of Default</u>"):

(a)  The Company's failure to pay any principal or accrued interest evidenced hereby within five (5) days after such payment of principal or interest becomes due in accordance with the terms of this Note.

If an Event of Default has occurred and is continuing, the interest rate shall be increased to the lesser of (a) eighteen percent (18%) or (b) the maximum rate permitted by law.

7.   <u>Cumulative Rights</u>. No delay on the part of Payee in the exercise of any power or right under this Note or under any other instrument executed pursuant hereto shall operate as a waiver thereof, nor shall a single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

8.   <u>No Usury</u>. If, from any circumstance whatever, fulfillment of any provision of this Note, at the time performance of such a provision shall be due, shall involve exceeding the limit of interest validity prescribed by the usury statute or any other law, then, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note, that is in excess of the limit of such validity. Further, in no event shall the Payor be bound to pay interest in excess of the highest lawful rate for the use, forbearance or detention of money loaned and secured hereby; the right to demand any such excess shall be and is hereby waived, and this provision shall control every other provision of this Note.

9.   <u>Attorneys' Fees and Costs</u>. If the indebtedness represented by this Note or any part thereof is collected at law or in equity or in bankruptcy, receivership or other judicial proceedings or if this Note is placed in the hands of attorneys for collection after default, the Company agrees to pay, in addition to the principal and interest payable hereon, reasonable attorneys' fees and costs incurred by Payee.

10.   <u>Governing Law</u>. This Note shall be governed by and construed in accordance with the laws of the State of Texas without reference to that state's conflicts of laws provisions.

11.   <u>Headings</u>. The headings of the sections of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

12.   <u>Successors and Assigns</u>. The Company shall not assign or delegate its obligations hereunder without the prior written consent of Payee. To the extent permitted hereunder, all of the stipulations, promises and agreements in this Note contained by or on behalf of the Company shall bind the successors and assigns of the Company and Payee, whether so expressed or not, and inure to the benefit of the successors and assigns of the Company and Payee. Any permitted assignee of the Company or Payee shall agree in writing prior to the effectiveness of such assignment to be bound by the provisions hereof.

13.   <u>Transfer</u>. This Note may be transferred only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form reasonably satisfactory to the Company. Thereupon, a new Note will be issued to, and registered in the name of, the transferee. Interest and principal are payable only to the registered holder of this Note.

14.   <u>Severability</u>. In the event any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

15.   <u>Counterparts</u>. This Note may be executed in any number of identical counterparts, any set of which signed by the parties shall be deemed to constitute a complete, executed original for all purposes. A facsimile or electronically generated signature will also be deemed to constitute an original if properly executed.

16.   <u>Legends</u>. It is understood that the certificates evidencing any Securities **may** bear the following legend together with any other legends required by applicable laws:

> "THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD, OFFERED FOR SALE, ASSIGNED, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR LAWS UNLESS THE CORPORATION HAS RECEIVED AN OPINION OF COUNSEL SATISFACTORY TO THE CORPORATION THAT SUCH REGISTRATION IS NOT REQUIRED

OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT AND AN EXEMPTION UNDER THE APPLICABLE STATE SECURITIES LAWS."

17.  **THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS, WHEREOF, the Parties have caused this Convertible Promissory Note to be duly executed and delivered on and as of the day and year first written above.

**INTELLECTIVE AI, INC.**                                   **PAYEES:**


_____          _____
By:
Title:

# <u>Plan Exhibit 1.43</u>

# Patent Portfolio

**ATTACHMENT B - 60**
**PATENTS**

**OMNI AI, INC.**
**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | COGNITIVE INFORMATION SECURITY USING A BEHAVIORAL RECOGNITION SYSTEM | 61/864,274 | 8/9/2013 | | | Expired | Provisional |
| Omni AI, Inc. | COGNITIVE NEURO-LINGUISTIC BEHAVIOR RECOGNITION SYSTEM FOR MULTI-SENSOR DATA | 14/457,082 | 8/11/2014 | 9,639,521 | 5/2/2017 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | COGNITIVE INFORMATION SECURITY USING A BEHAVIORAL RECOGNITION SYSTEM | 14/457,060 | 8/11/2014 | 9,507,768 | 11/29/2016 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | COGNITIVE INFORMATION SECURITY USING A BEHAVIORAL RECOGNITION SYSTEM | 15/363,871 | 11/29/2016 | 9,973,523 | 5/15/2018 | Registered | Continuation |
| Omni AI, Inc. | COGNITIVE INFORMATION SECURITY USING A BEHAVIORAL RECOGNITION SYSTEM | 15/469,568 | 3/26/2017 | | | Published | Continuation |
| Omni AI, Inc. | COGNITIVE INFORMATION SECURITY USING A BEHAVIORAL RECOGNITION SYSTEM | 15/978,150 | 5/13/2018 | | | Application Filed | Continuation |
| Omni AI, Inc. | VIDEO SURVEILLANCE SYSTEM | 61/611,284 | 3/15/2012 | | | Expired | Provisional |
| Omni AI, Inc. | ALERT VOLUME NORMALIZATION IN A VIDEO SURVEILLANCE SYSTEM | 13/836,730 | 3/15/2013 | 9,349,275 | 5/24/2016 | Registered | Non-Provisional from Provisional |

**ATTACHMENT B - 60**

**OMNI AI, INC.**

**PATENTS**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | ALERT VOLUME NORMALIZATION IN A VIDEO SURVEILLANCE SYSTEM | 15/163,461 | 5/24/2016 | | | Abandoned | Continuation |
| Omni AI, Inc. | ALERT DIRECTIVES AND FOCUSED ALERT DIRECTIVES IN A BEHAVIORAL RECOGNITION SYSTEM | 13/839,587 | 3/15/2013 | | | Allowed | Non-Provisional from Provisional |
| Omni AI, Inc. | LOITERING DETECTION IN A VIDEO SURVEILLANCE SYSTEM | 13/836,372 | 3/15/2013 | 9,208,675 | 12/8/2015 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | ALERT VOLUME NORMALIZATION IN A VIDEO SURVEILLANCE SYSTEM | 15/938,759 | 3/28/2018 | | | Application Filed | Continuation |
| Omni AI, Inc. | PIXEL-LEVEL BASED MICRO-FEATURE EXTRACTION | 12/543,141 | 8/18/2009 | 9,633,275 | 4/25/2017 | Registered | National |
| Omni AI, Inc. | PIXEL-LEVEL BASED MICRO-FEATURE EXTRACTION | 15/461,139 | 3/16/2017 | | | Allowed | Continuation |
| Omni AI, Inc. | METHOD AND SYSTEM FOR DETECTING SEA-SURFACE OIL | 61/691,102 | 8/20/2012 | | | Expired | Provisional |
| Omni AI, Inc. | METHOD AND SYSTEM FOR DETECTING SEA-SURFACE OIL | 13/971,027 | 8/20/2013 | 9,104,918 | 8/11/2015 | Registered | Non-Provisional from Provisional |

6730129v1

**ATTACHMENT B - 60**

**OMNI AI, INC.**

**PATENTS**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | DETECTING ANAMOLOUS SEA-SURFACE OIL BASED ON A SYNTHETIC DISCRIMINANT SIGNAL AND | 14/823,771 | 8/11/2015 | 9,412,027 | 8/9/2016 | Registered | Continuation |
| Omni AI, Inc. | METHOD AND SYSTEM FOR DETECTING SEA-SURFACE OIL | 15/232,743 | 8/9/2016 | | | Abandoned | Continuation |
| Omni AI, Inc. | ANOMALOUS OBJECT INTERACTION DETECTION AND REPORTING | 61/666,458 | 6/29/2012 | | | Expired | Provisional |
| Omni AI, Inc. | ANOMALOUS OBJECT INTERACTION DETECTION AND REPORTING | 13/931,058 | 6/28/2013 | 9,911,043 | 3/6/2018 | Registered | National |
| Omni AI, Inc. | ANOMALOUS OBJECT INTERACTION DETECTION AND REPORTING | 15/874,172 | 1/18/2018 | | | Application Filed | Continuation |
| Omni AI, Inc. | MAPPER COMPONENT FOR A NEURO-LINGUISTIC BEHAVIOR RECOGNITION SYSTEM | 14/569,034 | 12/12/2014 | | | Office Action Issued | National |
| Omni AI, Inc. | DYNAMIC ABSORPTION WINDOW FOR FOREGROUND BACKGROUND DETECTOR | 14/526,815 | 10/29/2014 | 9,471,844 | 10/18/2016 | Registered | National |
| Omni AI, Inc. | INCREMENTAL UPDATE FOR BACKGROUND MODEL THRESHOLDS | 14/526,879 | 10/29/2014 | 9,460,522 | 10/4/2016 | Registered | National |

6730129v1

**ATTACHMENT B - 60**

**PATENTS**

**OMNI AI, INC.**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | BACKGROUND FOREGROUND MODEL WITH DYNAMIC ABSORBTION WINDOW AND | 15/582,558 | 4/28/2017 | | | Published | Continuation |
| Omni AI, Inc. | FOREGROUND DETECTOR FOR VIDEO ANALYTICS SYSTEM | 14/526,756 | 10/29/2014 | 9,349,054 | 5/24/2016 | Registered | National |
| Omni AI, Inc. | FOREGROUND DETECTOR FOR VIDEO ANALYTICS SYSTEM | 15/582,524 | 4/28/2017 | | | Published | Continuation |
| Omni AI, Inc. | SCENE PRESET IDENTIFICATION USING QUADTREE DECOMPOSITION ANALYSIS | 12/543,223 | 8/18/2009 | 9,805,271 | 10/31/2017 | Registered | National |
| Omni AI, Inc. | SCENE PRESET IDENTIFICATION USING QUADTREE DECOMPOSITION ANALYSIS | 15/720,971 | 9/29/2017 | | | Application Filed | Continuation |
| Omni AI, Inc. | NETWORK DATA PROCESSING DRIVERS FOR BEHAVIORAL RECOGNITION SYSTEM | 62/319,068 | 4/6/2016 | | | Expired | Provisional |
| Omni AI, Inc. | NETWORK DATA PROCESSING DRIVER FOR A COGNITIVE ARTIFICAL INTELLIGENCE SYSTEM | 15/481,320 | 4/6/2017 | | | Response Filed | Non-Provisional from Provisional |
| Omni AI, Inc. | OPTIMIZED SELECTION OF DATA FEATURES FOR A NEURO-LIGUISTIC BEHAVIORAL RECOGNITION | 62/319,170 | 4/6/2016 | | | Expired | Provisional |

**ATTACHMENT B - 60**

**OMNI AI, INC.**

**PATENTS**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | METHODS AND SYSTEMS FOR OPTIMIZED SELECTION OF DATA FEATURES FOR A NEURO-LINGUISTIC | 15/481,298 | 4/6/2017 | | | Office Action Issued | Non-Provisional from Provisional |
| Omni AI, Inc. | LOGICAL NETWORK TOPOLOGY ANALYZER | 62/318,977 | 4/6/2016 | | | Expired | Provisional |
| Omni AI, Inc. | LOGICAL NETWORK TOPOLOGY ANALYZER | 15/135,382 | 4/21/2016 | | | Abandoned | Non-Provisional from Provisional |
| Omni AI, Inc. | ADAPTIVE ANOMALY CONTEXT DESCRIPTION | 15/135,404 | 4/21/2016 | | | Abandoned | Non-Provisional from Provisional |
| Omni AI, Inc. | ADAPTIVE ANOMALY CONTEXT DESCRIPTION | 15/914,211 | 3/7/2018 | | | Application Filed | Continuation in Part |
| Omni AI, Inc. | UNUSUAL SCORE GENERATORS FOR A NEURO-LINGUISTIC BEHAVIOR RECOGNITIONS SYSTEM | 62/318,964 | 4/6/2016 | | | Expired | Provisional |
| Omni AI, Inc. | UNUSUAL SCORE GENERATORS FOR A NEURO-LINGUISTIC BEHAVIORAL RECOGNITION SYSTEM | 15/177,069 | 6/8/2016 | | | Abandoned | Non-Provisional from Provisional |
| Omni AI, Inc. | UNUSUAL SCORE GENERATORS FOR A NEURO-LINGUISTIC BEHAVIORAL RECOGNITION SYSTEM | 15/881,945 | 1/29/2018 | | | Application Filed | Continuation |

**ATTACHMENT B - 60**

**PATENTS**

**OMNI AI, INC.**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | NEURO-LINGUISTIC COGNITIVE ENGINE | 62/318,999 | 4/6/2016 | | | Expired | Provisional |
| Omni AI, Inc. | METHODS AND SYSTEMS USING COGNITIVE ARTIFICIAL INTELLIGENCE TO IMPLEMENT | 15/481,302 | 4/6/2017 | | | Published | Non-Provisional from Provisional |
| Omni AI, Inc. | ANOMALY SCORE ADJUSTEMENT ACROSS ANOMALY GENERATORS | 15/091,209 | 4/5/2016 | | | Published | National |
| Omni AI, Inc. | TREND ANALYSIS FOR A NEURO-LINGUISTIC BEHAVIOR ROCOGNITION SYSTEM | 15/090,874 | 4/5/2016 | | | Published | National |
| Omni AI, Inc. | TRAJECTORY CLUSTER MODEL FOR LEARNING TRAJECTORY PATTERNS IN VIDEO DATA | 15/090,862 | 4/5/2016 | | | Response Filed | National |
| Omni AI, Inc. | DATA COMPOSITE FOR EFFICIENT MEMORY TRANSFER IN A BEHAVORIAL RECOGNITION SYSTEM | 15/090,366 | 4/4/2016 | 9,965,382 | 5/8/2018 | Registered | National |
| Omni AI, Inc. | DATA COMPOSITE FOR EFFICIENT MEMORY TRANSFER IN A BEHAVORIAL RECOGNITION SYSTEM | 15/881,182 | 1/26/2018 | | | Application Filed | Continuation in Part |
| Omni AI, Inc. | DETECTED OBJECT TRACKER FOR VIDEO ANALYTICS SYSTEM | 14/863,267 | 9/23/2015 | | | Abandoned | National |

ATTACHMENT B - 60                          OMNI AI, INC.
PATENTS                                    CASE NO. 18-33742

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | DETECTED OBJECT TRACKER FOR A VIDEO ANALYTICS SYSTEM | 14/863,344 | 9/23/2015 | | | Office Action Issued | National |
| Omni AI, Inc. | DETECTED OBJECT TRACKER FOR A VIDEO ANALYTICS SYSTEM | 14/863,311 | 9/23/2015 | | | Office Action Issued | National |
| Omni AI, Inc. | DETECTED OBJECT TRACKER FOR A VIDEO ANALYTICS SYSTEM | 14/863,295 | 9/23/2015 | | | Abandoned | National |
| Omni AI, Inc. | DETECTED OBJECT TRACKER FOR VIDEO ANALYTICS SYSTEM | 15/934,328 | 3/23/2018 | | | Application Filed | Continuation |
| Omni AI, Inc. | DYNAMIC MEMORY ALLOCATION IN A BEHAVORAL RECOGNITION SYSTEM | 15/090,346 | 4/4/2016 | | | Abandoned | National |
| Omni AI, Inc. | LOGICAL SENSOR GENERATION IN A BEHAVIORAL RECOGNITION SYSTEM | 15/090,795 | 4/5/2016 | | | Allowed | National |
| Omni AI, Inc. | IMAGE DRIVER THAT SAMPLES HIGH RESOLUTION IMAGE DATA | 14/952,090 | 11/25/2015 | | | Response Filed | National |
| Omni AI, Inc. | PERCEPTUAL ASSOCIATIVE MEMORY FOR A NEURO-LINGUISTIC BEHAVIOR RECOGNITION | 14/569,161 | 12/12/2014 | | | Office Action Issued | National |

6730129v1

**ATTACHMENT B - 60**
**PATENTS**

**OMNI AI, INC.**
**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | UNSUPERVISED LEARNING OF FEATURE ANOMALIES FOR A VIDEO SURVEILLANCE SYSTEM | 61/666,359 | 6/29/2012 | | | Expired | Provisional |
| Omni AI, Inc. | UNSUPERVISED LEARNING OF FEATURE ANOMALIES FOR A VIDEO SURVEILLANCE SYSTEM | 13/929,494 | 6/27/2013 | 9,111,148 | 8/18/2015 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | ANOMALOUS STATIONARY OBJECT DETECTION AND REPORTING | 61/666,406 | 6/29/2012 | | | Expired | Provisional |
| Omni AI, Inc. | ANOMALOUS STATIONARY OBJECT DETECTION AND REPORTING | 13/930,190 | 6/28/2013 | 9,723,271 | 8/1/2017 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | ANOMALOUS STATIONARY OBJECT DETECTION AND REPORTING | 15/636,872 | 6/29/2017 | | | Published | Continuation |
| Omni AI, Inc. | AUTOMATIC GAIN CONTROL FILTER IN A VIDEO ANALYSIS SYSTEM | 61/666,426 | 6/29/2012 | | | Expired | Provisional |
| Omni AI, Inc. | AUTOMATIC GAIN CONTROL FILTER IN A VIDEO ANALYSIS SYSTEM | 13/930,222 | 6/28/2013 | 9,317,908 | 4/19/2016 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | AUTOMATIC GAIN CONTROL FILTER IN A VIDEO ANALYSIS SYSTEM | 15/132,670 | 4/19/2016 | | | Allowed | Continuation |

6730129v1

**ATTACHMENT B - 60**

**OMNI AI, INC.**

**PATENTS**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | LEXICAL ANALYZER FOR A NEURO-LINGUISTIC BEHAVIOR RECOGNITION SYSTEM | 14/569,104 | 12/12/2014 | | | Office Action Issued | National |
| Omni AI, Inc. | IMAGE STABILIZATION TECHNIQUES FOR VIDEO SURVEILLANCE SYSTEMS | 61/725,420 | 11/12/2012 | | | Expired | Provisional |
| Omni AI, Inc. | IMAGE STABILIZATION TECHNIQUES FOR VIDEO SURVEILLANCE SYSTEMS | 14/077,097 | 11/11/2013 | 9,232,140 | 1/5/2016 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | IMAGE STABILIZATION TECHNIQUES FOR VIDEO SURVEILLANCE SYSTEMS | 14/988,475 | 1/5/2016 | 9,674,442 | 6/6/2017 | Registered | Continuation |
| Omni AI, Inc. | IMAGE STABILIZATION TECHNIQUES FOR VIDEO SURVEILLANCE SYSTEMS | 15/582,518 | 4/28/2017 | | | Published | Continuation |
| Omni AI, Inc. | DETECTING AND RESPONDING TO AN OUT-OF-FOCUS CAMERA IN A VIDEO ANALYTICS SYSTEM | 61/666,601 | 6/29/2012 | | | Expired | Provisional |
| Omni AI, Inc. | DETECTING AND RESPONDING TO AN OUT-OF-FOCUS CAMERA IN A VIDEO ANALYTICS SYSTEM | 13/930,958 | 6/28/2013 | 9,113,143 | 8/18/2015 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | ADAPTIVE ILLUMINANCE FILTER IN A VIDEO ANALYSIS SYSTEM | 61/666,524 | 6/29/2012 | | | Expired | Provisional |

**ATTACHMENT B - 60**

**PATENTS**

**OMNI AI, INC.**

**CASE NO. 18-33742**

| Applicant / Assignee | Title | U.S. Application No. | Application Date | U.S. Patent No. | Patent Issue Date | Last Status | Category Description |
|---|---|---|---|---|---|---|---|
| Omni AI, Inc. | ADAPTIVE ILLUMINANCE FILTER IN A VIDEO ANALYSIS SYSTEM | 13/930,276 | 6/28/2013 | 9,111,353 | 8/18/2015 | Registered | Non-Provisional from Provisional |
| Omni AI, Inc. | HIERARCHICAL SUDDEN ILLUMINATION CHANGE DETECTION USING RADIANCE CONSISTENCY | 12/336,382 | 12/16/2008 | 9,373,055 | 6/21/2016 | Registered | National |

# Plan Exhibit 3.11

# General Unsecured Claims (Trade)

**Plan Exhibit 3.11**

**General Unsecured Claims (Trade)**

| | |
|---|---|
| Assed Kalil | $17,982.03 |
| Cresco Research Solutions OVT, LTD | $1,625 |
| Dunn Firm, P.C. | $23,925 |
| Eaton Corporation | $1,492.77 |
| Federal Express | $597.89 |
| Houston Portfolio, LLC | $101,105.20* |
| H20 Warehouse L.P. | $990,223.13** |
| Sloan & Roberts, PLLC | $28,754.27 |
| Spitz Industrial Design, LLC | $5,000 |

**\* Subject to reduction as to setoff of security deposit**

**\*\* Subject to reduction as to setoff of security deposit as well as to objection for exceeding Code imposed restriction on future rent claims per § 502(a)(6)**

# Plan Exhibit 3.12

# General Unsecured Claims (Non-Trade)

## Plan Exhibit 3.12

## General Unsecured Claims (Non-Trade)

| | |
|---|---|
| **Ithaka Partners LLC** | **$381,000** |
| **Tom Wells** | **$120,000** |
| **Craig McElheny** | **$134,000** |

# Plan Exhibit 4.02

# Means for
# Allowed Pepperwood/Omni
# Secured Lenders to
# Acquire Interests Post
# Confirmation

# Plan Exhibit 4.02

## Means for Allowed Pepperwood/Omni Secured Lenders
## to Acquire Interests Post Confirmation

*Initial Participation Sequence*

Each Allowed Pepperwood/Omni Secured Lender will be afforded the opportunity to acquire a pro-rata share of 20% of Interests Post Confirmation. The pro-rata percentages will be determined by dividing the amount of each Allowed Pepperwood/Omni Secured Lender's Allowed Secured Claim by the total of all Allowed Secured Claims for the Pepperwood/Omni Secured Lenders class. Each participating Allowed Pepperwood/Omni Secured Lender will be required to complete a Subscription Agreement (see Plan Exhibit 4.02.A) to acknowledge receipt of the Disclosure Statement and the Offering Memorandum Supplement (see Plan Exhibit 4.02B) describing the Interests Post Confirmation being offered and to make certain representation to Intellective AI, Inc., among other things, that it is an "accredited investor" as such term is defined in Rule 501 of Regulation D of the Securities Act of 1933, as amended, a "qualified purchaser" as such term is defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended and is not a "prohibited person" (generally, a person involved in money laundering or terrorist activities, including those persons or entities that are included on any relevant lists maintained by the U.S. Treasury Department's Office of Foreign Assets Control, any senior foreign political figures, their immediate family members and close associates, and any foreign shell bank). The Subscription Agreement will be due in the period from and after the Confirmation Date (which will be communicated to said holders) but within seven (7) days of the Plan Closing Date. The determination of the participation level for each Allowed Pepperwood/Omni Secured Lender will be made prior to the entry of the Confirmation Order and communicated to the holders of each Allowed Pepperwood/Omni Secured Lender by e-mail or telecopy information provided on the completed ballot on or after the entry of the Confirmation Order. Funding of the acquisition of the Interests Post Confirmation will be due within seven (7) days of delivery of notice by Intellective Ai of entry of the Confirmation Order.

*Subsequent Participation Sequence*

Each Allowed Pepperwood/Omni Secured Lender will have the opportunity to acquire a maximum amount of any unsubscribed Interest Post Confirmation that the other Allowed Pepperwood/Omni Secured Lender were not willing to purchase during the Initial Participation Sequence.

As to any Allowed Pepperwood/Omni Secured Lender that fails to elect to purchase all of their proportionate share of the 20% of Interests Post Confirmation within offering window and sufficient interest has not been indicated to purchase such unsubscribed Interest, Intellective Ai, Inc. shall, within ten (10) days thereafter, given written notice to each of the Allowed Pepperwood/Omni Secured Lenders electing to participate, stating the portion of the Interest Post Confirmation offered for sale but not purchased by the other Pepperwood/Omni Secured Lenders, and the price. Such notice shall be sent by email addressed to each Allowed Pepperwood/Omni

Secured Lenders at the email address provided to Intellective Ai in the respective Indication of Participation.  Within ten (10) days after the delivery of said notices any participating Allowed Pepperwood/Omni Secured Lender desiring to purchase part or all of such unsubscribed Interest Post Confirmation shall deliver by email or otherwise to Intellective AI. a written offer for the portion of the unsubscribed Interest Post Confirmation desired to be purchased.

If the Allowed Pepperwood/Omni Secured Lenders, at any point in the subscription process, offer to purchase more than the total 20% of Interests Post Confirmation available for purchase, then the Allowed Pepperwood/Omni Secured Lenders offering to purchase shall be entitled to purchase such proportion of said Interest Post Confirmation as the portion of the Allowed Secured Claims for each such Allowed Pepperwood/Omni Secured Lender  bears to the total of the Allowed Secured Claims for all such Allowed Pepperwood/Omni Secured Lender offering to purchase.

*Commitment to Acquire Unsubscribed Interests Post Confirmation*.

As referenced in Plan Exhibit 4.02C, if after the Initial Participation Sequence and the Subsequent Participation Sequence, there are any unsubscribed Interests Post Confirmation, then Tom Wells and AFT, LLC will proportionately acquire all of the referenced unclaimed Interests Post Confirmation.

# <u>Plan Exhibit 4.02A</u>

# Subscription Agreement

**WILL BE PROVIDED AT LEAST FIVE (5) BUSINESS DAYS PRIOR TO OBJECTION DEADLINE REGARDING HEARING ON DISCLOUSRE STATEMENT**

# <u>Plan Exhibit 4.02B</u>

# Offering Memorandum Supplement

**WILL BE PROVIDED AT LEAST FIVE (5) BUSINESS DAYS PRIOR TO OBJECTION DEADLINE REGARDING HEARING ON DISCLOUSRE STATEMENT**

# <u>Plan Exhibit 4.02C</u>

# Agreement to Acquire Unclaimed Interests

**WILL BE PROVIDED AT LEAST FIVE (5) BUSINESS DAYS PRIOR TO OBJECTION DEADLINE REGARDING HEARING ON DISCLOUSRE STATEMENT**

# Plan Exhibit 4.05

# Intellective AI New Bylaws

**WILL BE PROVIDED AT LEAST FIVE (5) BUSINESS DAYS
PRIOR TO OBJECTION DEADLINE REGARDING HEARING
ON DISCLOUSRE STATEMENT**